### In re BREITLING.

(Circuit Court of Appeals, Seventh Circuit.   October 4, 1904.)

#### No. 1,043.

**1.** BANKRUPTCY—RIGHT TO DISCHARGE—FRAUDULENT CONCEALMENT OF ASSETS.

A bankrupt is required to show the utmost good faith and make the fullest disclosures of his assets, and where he knowingly and designedly omits assets from his schedule, although the amount is small, he will be held to have done so with intent to defraud his creditors, and denied a discharge, notwithstanding his claim that he acted under advice of counsel, unless it appears that he stated the facts fully to his counsel, and that the advice was given and received in good faith.

**2.** SAME.

A bankrupt, a day or two before filing a voluntary petition, contracted to sell certain property to be taken away by the purchaser. He did not schedule either the property or the debt, and on objection to his discharge on the ground of false oath and concealment of property claimed that when he signed his schedules he did not know whether the purchaser had taken the property or not, and that it was omitted by advice of his counsel, from which he understood that he was entitled to it as a part of his exemption, but he scheduled and claimed as exempt other specific property to the full value of his exemption right. *Held,* that his testimony was not sufficient to show that he acted in good faith, or fairly presented the facts to his counsel, and that he was not entitled to a discharge.

Appeal from the District Court of the United States for the Northern District of Illinois.

This is an appeal from a decree discharging the bankrupt from his debts. A voluntary and duly verified petition in bankruptcy was filed August 8, 1902, an adjudication in bankruptcy forthwith following. The schedules attached to the petition, and which are material to be considered, exhibit as follows: Personal property, Schedule B (2). A. Cash on hand, $100. C. Stock in trade, none. D. Household goods, etc. (specifying them), $300. Schedule B (3). Debts due petitioner on open account, Harry Van Kuran, $13.75. D. Unliquidated claims, none. Schedule B (4). Sum paid to counsel for services in bankruptcy, $50. Schedule B (5). Property claimed to be exempt by the law of Illinois (Rev. St. c. 52, § 13); specifies the property stated in Schedule B (2) D, valued at $300, and in Schedule B (2) K, machinery, fixtures, etc., used in business, valued at $800, and places the valuation of the entire property claimed as exempt at $400.

On August 26, 1902, the bankrupt filed amended schedules which, so far as material, are as follows: Schedule B (3). A. Debts due petitioner on open account. Six additional accounts are inserted, namely, Kopprelmeier & Mohr, $86.85; F. M. Ellis, $9.20; D. L. Hahn, $70.30; E. H. Hann, $66.76; James Madison, $37.94; H. A. Colton, $18.26. Schedule B (5). Property claimed to be exempt by state law; omits six articles of household furniture stated in the original schedule, and includes one lamp, one bicycle, and one

ice box, not mentioned in the original schedule, and places the valuation of the property claimed as exempt at $400.

On November 20, 1902, the bankrupt petitioned for a discharge from his debts, which was opposed by one Palmer, a creditor, who, on December 18, 1902, filed specifications of objections to the discharge, that the bankrupt had knowingly and fraudulently made a false oath, and had concealed from his trustee in bankruptcy a quantity of lumber and a certain debt due on open account from the Waldheim Cemetery Company, and also a half interest in a certain claim and action for $5,000 damages for trespass, then pending in a state court. The answer of the bankrupt denied that he in any wise had made any false or untrue statements, but alleged that the schedules truthfully set forth the condition of his estate. He alleged that the small stock in trade possessed by him had, prior to filing his petition in bankruptcy, been sold, and the proceeds, when received by him, were applied to the cost of the bankruptcy proceeding and in partial payment of his solicitors; that the account of the Waldheim Cemetery Company, with others, was, by agreement between the bankrupt and his solicitors, to apply upon their fees and the costs of the bankruptcy proceedings; and that at the time of making oath to the schedules he did not understand that the lumber or the account due upon the sale thereof, was required to be scheduled. He concedes the facts charged with respect to the action for damages, but refuses to plead thereto, and excepts to the allegation in that behalf.

The matter was referred to a referee, whose report, filed April 24, 1903, was to the effect, first, that the omission to schedule the half interest in the suit for damages for an illegal levy under a chattel mortgage upon property claimed to be exempt was because the bankrupt had been advised by his counsel that it was not an asset and should not be scheduled. With respect to the claim against the Waldheim Cemetery Company, the referee reported as follows: "It appears from the evidence that the bankrupt had an order from the Waldheim Cemetery Company for some $40 worth of lumber shortly before his bankruptcy. At the time he filed his petition he was ignorant of the fact whether said lumber had been delivered from his yard to the said company or not. It is true, in my opinion, that he should have scheduled either the lumber or the claim against the said company. It appears, however, that he conferred with his counsel, Messrs. Guthrie & Palmer, concerning the said matter, and, as he was ignorant of the fact that the lumber was still in his possession, acting under their advice, he did not schedule. Although it appears that the said lumber was in his possession, and was taken away by the Waldheim Cemetery Company some two days after he filed the petition in bankruptcy, and the amount thereof was collected by him and turned over to his lawyers to apply on costs and attorney's fees, I consider the fact that he had submitted this question to his counsel, and they drew the papers in accordance with their views as to what should be properly scheduled, relieved the bankrupt of the fraudulent intent which would be necessary to substantiate the objection to his discharge on that ground."

On June 5, 1903, amended objections to the discharge of the bankrupt were filed by leave of court, and on the 30th of June the court ordered "that leave be, and it hereby is, given to amend said specifications on their face," but not otherwise specifying wherein they were to be amended. The matter would seem to have been re-referred, although no formal order for such reference appears by the record; but the referee, on September 8, 1903, made further report, in which he states that subsequently to his report application was made by the objector for permission to file amended specifications for the discharge, and that thereupon the court made an order as follows: "Ordered, that leave be, and it hereby is, given said objecting creditor to amend his specification by amplifying and enlarging the same, but no new matter to be introduced, without prejudice to the reference herein;" and that thereupon the objector filed a new and amended set of specifications. The referee reports that the amended specifications are 16 in number; that specifications 2, 4, 8, 10, 12, 13, 14, 15, and 16 set up new matter not embraced in the original specifications, and that the other specifications, while not new, are substantially covered by the original specifications; and that his report should stand. Upon exceptions to the report the matter was heard by the

court, the exceptions overruled, and the bankrupt discharged from his debts on October 6, 1903; from which decree this appeal is taken.

The case presented at the bar is based solely upon the omission of the account of the Waldheim Cemetery Company. The only evidence taken before the referee was that of the bankrupt himself, who testified that while he was engaged with his lawyers preparing the bankruptcy proceedings he arranged with the Waldheim Cemetery Company to sell to that company the lumber remaining in his yard. That at the time he verified his petition he did not know whether the company had obtained the lumber or not. He learned of it one or two days afterward, and within a week after filing the petition he obtained from the Waldheim Cemetery Company the money for the lumber. That in the original schedules he neither scheduled the lumber nor a claim against the cemetery company. That in so doing he followed the instructions of his attorneys; and to an interrogatory, "What did they say?" he answered, "If you are entitled to that, inasmuch as you have only got what you indicate, and you are entitled to an exemption of four hundred dollars;" and that is substantially all that was said. He further testifies that the $50 paid to his counsel was paid partly in cash and partly by an order on Zahn, and this prior to August 8th.

William S. Corbin, for appellant.
William R. Moss, for appellee.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

JENKINS, Circuit Judge (after stating the facts as above). A discharge from one's debts is a privilege created by the bankruptcy act upon condition of a surrender to creditors of all the property of the bankrupt, except such as is exempted from execution by the law of his domicile. There must therefore be entire good faith upon the part of the bankrupt. He must surrender his property fully. He may not retain that which should go to his creditors. His duties are specifically set forth in section 7 of the act of July 1, 1898, c. 541, 30 Stat. 548 [U. S. Comp. St. 1901, p. 3424]. He is not entitled to discharge if he has committed any of the acts specified in section 4 of the amendatory act of February 5, 1903, c. 487, 32 Stat. 797 [U. S. Comp. St. Supp. 1903, p. 411]. A discharge will be denied if he has committed an offense punishable by imprisonment, as prescribed by the bankruptcy act, or if he has concealed any of his property with intent to hinder, delay, or defraud his creditors. The act requires the fullest disclosure, the utmost good faith, the surrender of all his estate not exempt by the act. It is well observed by Judge Brown that "a discharge in bankruptcy upon any other condition than the complete appropriation of every known asset legally available to creditors would not be only a glaring wrong to creditors, but contrary to every conception of a just system of bankruptcy." In re Baudouine (D. C.) 96 Fed. 536, 539. If it be doubtful whether a specific item of property should go to creditors or be reserved by the bankrupt, it is not for him to constitute himself the judge, concealing the fact, but it is his duty to disclose the transaction, that the bankruptcy court may determine the right. In re Gailey, 62 C. C. A. 336, 127 Fed. 538.

Without question the claim against the Waldheim Cemetery Company should have been scheduled. This the referee concedes in his report. It was knowingly and designedly omitted by the bankrupt. This is conceded by him. But he insists that it was so done upon the advice of counsel. But advice of counsel cannot excuse violation of law. It

may mitigate the act, according to the character of the advice and circumstances under which it is given. If the omission here were in the exercise of a supposed right under advice taken and given in good faith, the bankrupt might be absolved of the charge of making a false oath or of designedly concealing his estate from his creditors. To work such result, however, the facts must be fully and in good faith stated to counsel, and the act charged done innocently, and believing that he had been correctly advised. Whether the bankrupt here stands in such plight, depends upon the facts of the case, judged in the light of all the surrounding circumstances.

The bankrupt exhibits debts to the amount of $5,775.70. His assets consisted of accounts receivable stated to amount to $303.06, and not including the account against the Waldheim Cemetery Company, or against one Zahn, hereinafter referred to. Whether the scheduled accounts were collectible or not does not appear from the record. The bankrupt had also $100 in cash, household furniture specified and said to be of the value of $300, office and equipment of lumber yard described and stated to be of the value of $800, wearing apparel $75. All of this property except the accounts receivable and $100 in cash is claimed to be exempt, and in the schedule of exemptions the property, otherwise stated to be of the value of $1,100, is declared to be worth only $400, the precise amount of exemptions allowed by the statute of Illinois (2 Starr & C. Ann. St. 1896, p. 1887, c. 52, § 13). It is also to be observed that the original schedule exhibited a single account receivable of $13.75, the others being disclosed by the amended schedule filed 17 days after the filing of the original. These are circumstances, inconclusive, indeed, of themselves, but in connection with the other facts disclosed are not without weight in marking the purpose of the bankrupt in withholding a good receivable and appropriating it to his own use. The referee finds that the amount of the account of the Waldheim Cemetery Company was not scheduled, under the advice of counsel, and that the amount of it was collected by the bankrupt, and turned over to his lawyers to apply on their fees, and therefore the bankrupt is relieved of the fraudulent intent, although it is true, as the referee finds, that either the lumber or the claim against the company should have been scheduled. The finding is incorrect that the bankrupt turned over the amount of the account against the Waldheim Cemetery Company to his counsel. The bankrupt, in his formal answer to the objections to the discharge so states, and that he had transferred the account to his counsel before verifying the schedule; but upon his examination before the referee he tells a different story. He does not there claim that any transfer of the Waldheim Cemetery Company account was at any time made to his counsel. It appeared that the $50 paid to counsel was paid partly in cash and partly by an order on one Zahn for $25, and this before the filing of the petition; and the bankrupt afterward collected the money from Zahn upon the order, and paid it to his counsel. Nor, as we understand the bankrupt's evidence, was he advised by counsel that he had a right to retain this Waldheim account. He states that his recollection is that counsel advised him that he "was entitled to that in connection with what I had. It was represented to me that I was entitled to a preference of $400, and that I was justified in making that

sale and not putting it in;" and when requested to state the language employed by his counsel, he answered that they said, "If you are entitled to that, inasmuch as you have only got what you indicate and you are entitled to an exemption of $400," and that that was substantially all that they said. The bankrupt knew that he was entitled but to $400 exemptions. He also knew, for it was before him in writing in his schedules, which he verified, that he had specified the particular property not including the account which he claimed as exempt, and had stated its value at $400; that that property was otherwise stated in other schedules as worth $1,100. He knew that, retaining the Waldheim account as exempt, he would have a larger sum than the law allowed him, assuming that the property claimed as exempt was only worth the sum of $400, as stated. This question of fact rests upon the statement of the bankrupt. It does not satisfactorily appear that he fairly presented the case to his counsel, or that his counsel advised him that he was entitled to retain the account as exempt, in addition to the $400 of exemptions claimed, or that he could properly omit it from the schedules. We should be loath to believe that counsel could so have advised him, and he has not called upon them to verify his statement, weak and inconclusive as it appears. The facts here which are fully established lead us to the conclusion that the bankrupt purposely retained and concealed from his creditors that to which he was not entitled, and knowingly made false oath to his schedules. The amount involved, it is true, is small, but the design to conceal was deliberate and is clear. We are indisposed to give countenance in the slightest degree to any act which shall withhold from creditors any part of the estate of a bankrupt which lawfully he should devote to the payment of his debts.

The decree is reversed.