In re BRINCAT.

(District Court, S. D. Alabama. April 10, 1916.)

No. 1564.

1. BANKRUPTCY ⊙⟿408(3)—DISCHARGE—RIGHT TO.

To entitle a bankrupt to a discharge under Bankr. Act July 1, 1898, c. 541, § 14, 30 Stat. 550 (Comp. St. 1913, § 9598), denying a discharge where he has transferred, removed, destroyed, or concealed any of his property with intent to delay, hinder, or defraud his creditors, he must have acted in entire good faith and have surrendered all his property.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 735, 736; Dec. Dig. ⊙⟿408(3).]

2. BANKRUPTCY ⊙⟿408(3)—DISCHARGE—"CONCEALMENT."

For a bankrupt to be denied a discharge on the ground of concealment of his property, the concealment must have been knowingly and fraudulently done, and a mere omission to include property in the schedule, where innocent, does not operate as a concealment; but where a bankrupt omitted from his schedule considerable sums of money, which he had received very shortly before the bankruptcy and had either on his person or in his possession, such omission constituted a "concealment," and warranted the denial of a discharge under Bankr. Act, § 14b.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 735, 736; Dec. Dig. ⊙⟿408(3).

For other definitions, see Words and Phrases, First and Second Series, Concealment.]

3. BANKRUPTCY ⊙⟿414(1)—DISCHARGE—PRESUMPTIONS.

The failure of a bankrupt to account for property in his possession shortly before adjudication and not included in the schedule raises a presumption of concealment.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 720; Dec. Dig. ⊙⟿414(1).]

⊙⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. BANKRUPTCY ☞467—DISCHARGE—QUESTION FOR COURT.

The sufficiency of a bankrupt's explanation for the omission, of property or funds from his schedule is a question for the bankruptcy court to which an application for a discharge is made.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 929; Dec. Dig. ☞467.]

5. BANKRUPTCY ☞408(3) — PROCEEDINGS — DISCHARGE — CONCEALMENT — EXPLANATION.

Where a bankrupt's explanation of his failure to include in his schedule considerable sums of money received shortly before adjudication was evasive, and applied only to the failure to account for some of the funds, the explanation is insufficient, and the bankrupt will be denied a discharge on the ground of concealment of assets; it appearing that for some time after adjudication he used the money in defraying his expenses, and only included the sums in his schedules when he discovered that the creditors had learned of his possession of such funds.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 735, 736; Dec. Dig. ☞408(3).]

6. BANKRUPTCY ☞32—PROCEEDINGS—SCHEDULES—AMENDMENT.

Under General Orders in Bankruptcy, title "Amendments" (89 Fed. vii, 32 C. C. A. vii), a voluntary petitioner in bankruptcy, in applying for leave to amend his schedules, must state the cause of the error in those originally filed.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 31–33; Dec. Dig. ☞32.]

7. BANKRUPTCY ☞408(3)—PROCEEDINGS—EXEMPTIONS.

Whether a specific item of property should go to creditors or be reserved by the bankrupt as an exemption is not for the bankrupt to determine, and a bankrupt cannot retain a sum of money as an exemption, regardless of the consent of the bankruptcy court.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 735, 736; Dec. Dig. ☞408(3).]

8. BANKRUPTCY ☞400(1)—PROCEEDINGS—EXEMPTION.

The schedule of the bankrupt must contain his claim of exemptions, and the trustee is required to set them apart and report to the court.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 671, 673; Dec. Dig. ☞400(1).]

9. BANKRUPTCY ☞414(3)—DISCHARGE—CONCEALMENT OF ASSETS.

A willful and fraudulent concealment of assets by a bankrupt need only be shown by a clear preponderance of the credible evidence.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 722; Dec. Dig. ☞414(3).]

10. FRAUD ☞50, 58(1)—PRESUMPTIONS—CIRCUMSTANTIAL EVIDENCE.

While fraud may not be presumed, it may be established by circumstantial evidence.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. §§ 46, 47, 55; Dec. Dig. ☞50, 58(1).]

11. BANKRUPTCY ☞408(3)—CONCEALMENT OF ASSETS—WHAT CONSTITUTES.

Concealment of assets of a bankrupt before the appointment of the trustee, continuing after such appointment, is a concealment in violation of the Bankruptcy Act, and precludes discharge under Bankr. Act, § 14b.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 735, 736; Dec. Dig. ☞408(3).]

12. BANKRUPTCY ☞413(4)—DISCHARGE—SPECIFICATIONS.

Specifications of objection to discharge must exhibit, and the evidence in support of them must establish, one of the objections to discharge specified in Bankruptcy Act.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. ☞413(4).]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Bankruptcy. In the matter of the bankruptcy of John C. Brincat. On application for discharge. Application denied.

Francis J. Inge, of Mobile, Ala., for bankrupt.

Gregory L. Smith & Son, of Mobile, Ala., for objecting creditors.

TOULMIN, District Judge. On an application for a discharge and such proofs and pleas as may be made in opposition thereto by the trustee or other parties in interest the judge shall hear and investigate the merits of the application, and discharge the applicant, unless he has (among other grounds specified in the Bankrupt Law, not necessary to set out here under the objections and pleas in this case), at any time subsequent to the first day of the four months immediately preceding the filing of the petition, transferred, removed, destroyed, or concealed any of his property with intent to hinder, delay, or defraud his creditors. Section 14, Bankr. Act.

The special master reports that in his opinion the evidence wholly fails to sustain any of the specifications of objection to the granting of the petition for discharge by the bankrupt, except the first and eighth grounds. The two grounds mentioned are based on the fact that on April 19, 1915, there was paid to the bankrupt the sum of $347.50 by an insurance company on a loss by fire of certain property, consisting of a stock of goods and office furniture of said bankrupt, who on the 8th day of May, 1915, filed a voluntary petition in bankruptcy, and was on the same day adjudicated bankrupt. One of such specifications charged that the bankrupt fraudulently and knowingly concealed this money from his trustee, and the other that the bankrupt swore falsely to his original schedules, in that this same sum of money was omitted from his schedules.

[1-4] I agree with the special master in his finding and report that the specification of objection to the granting of the bankrupt's petition for discharge on the first and eighth grounds are sustained by the evidence. But I do not concur in his opinion that the evidence wholly fails to sustain any of the other specifications of objection to the discharge. I find several other specifications of objection assigned, and evidence to sustain them—evidence of the bankrupt himself. They are that the bankrupt sold to his brother, George Brincat, several pieces of office furniture and other furnishings of his store, named in said specifications, and not mentioned in his schedules, and for which, or at least some of which, said George Brincat bought from said bankrupt for $25. This item of $25 is not shown in the schedules as a cash asset, and said George Brincat is not named in the schedules as a debtor to the bankrupt estate, and the articles named as bought by George Brincat not scheduled. Some of the articles so sold to George Brincat, as testified to by the bankrupt, were a standing desk, hanging scales, chicken coops, and a typewriter desk.

While I agree with the special master in that the specifications of objection to the discharge of the bankrupt on the first and eighth grounds stated are sustained by the evidence, I do not concur in his inferences from said evidence, nor in his recommendations thereon. As stated by him, there is a good deal of conflict and some contradic-

tion in the evidence, and many suspicious circumstances developed in the evidence of the bankrupt. To entitle the bankrupt to the privilege of a discharge there must be entire good faith on his part; he must surrender his property fully; he may not retain or conceal any part thereof which should go to his creditors. Collier on Bankruptcy, p. 336; In re Breitling, 133 Fed. 146, 66 C. C. A. 212 (7th Circuit Court of Appeals); Barton Bros. v. Texas Produce Co. (Circuit Court of Appeals 8th Circuit) 136 Fed. 355, 69 C. C. A. 181.

To constitute a concealment of property it must be by the bankrupt, or by his procurement, after the filing of his petition, and from his trustee, or before such filing, and continued after such filing, and the appointment of the trustee, and such concealment must be knowingly and fraudulently done. If there is an entire absence of fraudulent intent, there is no offense. If there is an omission to include property in his schedule, and such omission is not satisfactorily explained, it will usually amount to a concealment. Seigel v. Cartel et al. (8th Circuit Court of Appeals) 164 Fed. 691, 90 C. C. A. 512. Presumption of concealment arises from failure to account for property in possession of the bankrupt shortly before adjudication, and not included in his schedules. The reasonableness of his story for its omission from his schedules, or the sufficiency of the explanation is in the judicial discretion of the judge. Seigel v. Cartel et al., supra. In the case just cited the court held that:

"Where a bankrupt fails to schedule or to surrender to his trustee goods shown to have been in his possession a short time prior to his bankruptcy, the burden rests upon him to account for the same, and if he fails to do so, the presumption is that he sold them and conceals the proceeds."

It is shown by the evidence that the bankrupt received on April 17, 1915, from an insurance company, as a fire loss on property (stock) contained in his store, $175; that on April 19, 1915, he received from the same company $347.50 on the same loss; and on April 20, 1915, he received from Norville Bros., agents, on a loss by same fire of office fixtures, $175, making a total of $697.50 in the course of four days. The bankrupt testified that he sold to his brother, George Brincat, a lot of office furniture and store fixtures for $25. The two sums of $175 each he testified he deposited in the bank. The name of the bank is not shown. It does not appear that the $347.50 or said $25 was deposited in bank. When asked what became of the $347.50, he stated that he spent some of it, paid his attorney $30 for bankruptcy proceedings, and gave Mr. Muscat $50 on April 27, 1915. It does not definitely appear when he paid his attorney, but his statements in reference to these payments would indicate that they were made about the same time. This was about 10 or 12 days prior to the petition in bankruptcy and the adjudication of the bankrupt. The bankrupt in this case not having scheduled or surrendered either the property or the money to the trustee, the concealment of the same, within the provisions of the statute, is presumed. In re Meyers, 96 Fed. 408; In re Finkelstein, 101 Fed. 418; In re Morgan, 101 Fed. 982.

[5] His explanation as to what disposition he made of the money he received from the insurance companies (the two $175 items he de-

posited in the bank) was that "it was used in paying some of the creditors." He did not introduce any evidence corroborative of the alleged payment of creditors. He failed to give the name of any creditor to whom he paid any of said money, or to whom he gave it, except to his attorney he paid $30, and to a person named Muscat he gave $50, both of which sums were, he testified, paid out of the $347.50 which he did not deposit in the bank. He gave no particular dates or particular sums paid, or given away, except the two mentioned—one to his attorney for bankruptcy proceedings, and the other to the said Muscat, whom he did not claim was either a creditor or borrower.

The bankrupt failed to include in his original schedules any of the money testified to by him as having been received by him and in his possession a short time before the filing of his petition in bankruptcy and his adjudication. His statement as to his having overlooked including in his schedules the amount of $347.50 for which he had received a check on the People's Bank, cashed by the bank, and by him kept either in his pocket or in the drawer of his dresser, as an explanation for his omission to schedule this money is incredible and unsatisfactory. He did not at any time deposit it in bank, and it appears that he was spending it for his own uses and purposes, concealed from his trustee, for more than 20 days after filing his petition and original schedules and his adjudication in bankruptcy.

Of the $350 deposited in bank, as stated by him, he schedules but $93 as on deposit in three banks. It is evident from facts and circumstances shown by the testimony that after the first meeting of the creditors and the appointment of the trustee the bankrupt knew that they had learned of his receipt of the insurance money mentioned. The fact that his brother saw Trustee Caffey and asked him what they were going to do about the insurance money, and the fact that bankrupt Brincat was asked on his examination as a witness in this case whether he sent his brother to Mr. Caffey to make this inquiry, failed to answer the question, but made this evasive reply, that "my brother went to buy some stuff," indicates that the bankrupt had a connection with or knowledge of this interview with Mr. Caffey.

A short time subsequent to said interview, the bankrupt filed an amended schedule A and B on May 31, 1915, containing a statement of his personal property by adding the following, "Cash on hand, $180," and claiming as exempt from the operation of the law relating to the same the said $180.

[6] In the application for leave to amend the schedule, the petitioner shall state the cause of the error in the paper originally filed. General Order 11, title "Amendments" (89 Fed. vii, 32 C. C. A. vii), which is made a part of the Bankruptcy Act. The original schedule filed May 8, 1915, does not contain the cash on hand scheduled in the amended schedule, which amended schedule does not state the cause of the error in that originally filed. It is not, therefore, in form and substance as required by the Bankruptcy Law.

[7] The bankrupt in his original schedule omits therefrom the $180 cash on hand, scheduled in his amended schedule, but asserts a claim to said $180 as exempted to him under the law of Alabama. He has

asserted a claim in his original schedule to an exemption, and has set out the articles claimed as so exempt. Moreover, he declined to pay over to his trustee the $180 scheduled, and it does not appear that he ever had the exemption set apart to him in accordance with the law of Alabama, but it seems that he himself has appropriated and retained the $180 as exempt. Whether a specific item of property should go to creditors or be reserved by the bankrupt, it is not for him to constitute himself the judge; but it is his duty to disclose the transaction, that the bankrupt court may determine the right. In re Gailey, 127 Fed. 538, 62 C. C. A. 336; In re Breitling, 133 Fed. 146, 66 C. C. A. 212.

[8] The schedules of the bankrupt must contain his claim of exemptions, and the trustee is required to set apart the bankrupt's exemptions and to report to the court as to the exemptions so set apart.

[9] A willful and fraudulent concealment of assets by a bankrupt need only be shown by a clear preponderance of credible evidence. It is not necessary to establish the concealment of assets beyond a reasonable doubt. In re Gaylord, 112 Fed. 668, 50 C. C. A. 415; Klein v. Powell, 23 Am. Bankr. R. 494, 174 Fed. 640, 98 C. C. A. 394; Garry v. Jefferson Bank, 26 Am. Bankr. R. 511, 186 Fed. 461, 108 C. C. A. 439.

[10] That fraud may not be presumed does not imply that it may not be proved by circumstances, since it may be apparent from the intrinsic nature and subject of the transaction itself. In re Walden Bros. Clothing Co., 199 Fed. 315; Lumpkin v. Foley, 204 Fed. 372, 122 C. C. A. 542. Direct evidence is not necessary to prove fraud, provided the circumstances relied on are convincing, and inconsistent with a presumption of honesty. Crowder v. Allen-West Commission Co., 213 Fed. 177, 129 C. C. A. 521; Goodman v. Curtis, 174 Fed. 644, 98 C. C. A. 398.

[11] Concealment of assets of a bankrupt before the appointment of the trustee, and continuing after such appointment, held a concealment from the trustee in violation of the Bankruptcy Act. Kaufman v. United States, 212 Fed. 613, 129 C. C. A. 149; United States v. Rhodes (D. C.) 212 Fed. 513.

[12] The specifications of objection must exhibit, and the evidence in support of them must prove, one of the objections specified in the law. Collier on Bankruptcy (9th Ed.) p. 334, § 14 (b), and authorities cited in note.

It is ordered and decreed that the application of the bankrupt for his discharge be and it is hereby denied, and that the costs of the proceeding for the discharge of the bankrupt be taxed against him.