**HEILBRONNER v. L. DINKELSPIEL CO., Inc.**

Circuit Court of Appeals, Ninth Circuit.
June 27, 1927.

No. 5056.

1. **Bankruptcy** ⊜⟶415(2)—Referee, on objection to bankrupt's discharge, held to have found the fact of concealment of assets.

The fact of concealment of assets within four months of filing of petition in bankruptcy *held* found by referee on objection to discharge of bankrupt.

2. **Bankruptcy** ⊜⟶414(3)—Finding of concealment of assets, justifying denial of discharge to bankrupt, held sustained by the evidence, in view of absence of explanation.

Finding of concealment of assets with intent to defraud creditors within four months before filing of petition, justifying denial of discharge to bankrupt, in view of his failure to explain facts shown, *held* sustained by the evidence.

Appeal from the District Court of the United States for the Northern Division of the Northern District of California; A. F. St. Sure, Judge.

In the matter of C. W. Heilbronner, bankrupt. Bankrupt was denied a discharge on objection of a creditor, the L. Dinkelspiel Company, Inc., and he appeals. Affirmed.

Wallace Shepard and Donald McKisick, both of Sacramento, Cal., for appellant.

Joseph Kirk and Clarence A. Shuey, both of San Francisco, Cal., for appellee.

Before HUNT, RUDKIN, and DIETRICH, Circuit Judges.

HUNT, Circuit Judge. This is an appeal from a decree denying Heilbronner, bankrupt, a discharge.

The creditor objecting specified several grounds, one of which was that between May 25 and August 8, 1925, and within four months prior to the filing of the petition in bankruptcy, the bankrupt, with intent to hinder, delay, and defraud his creditors, transferred, removed, and concealed certain of his assets, to wit, goods, wares, and merchandise, of the value in excess of $5,000; that according to a sworn statement of the bankrupt the property on May 25, 1925, was of the value of $14,822.07, and on August 8, 1925, an inventory of the stock showed the value to be less than $5,000, showing a decrease or shrinkage of approximately $10,000; that the bankrupt has failed reasonably and satisfactorily to account for the disappearance of $5,000 of said property, and that the property, or the proceeds therefrom, is being held in secret trust for the bankrupt.

The referee found as a fact from the evidence that the bankrupt made no explanation of the shortage of approximately $5,000 of the assets of the bankrupt; that for at least a week, toward the end of the business carried on by the bankrupt, he left the business in charge of outsiders, with no accounting, and with abundant opportunity for disposal of goods. The court affirmed the finding of the referee.

[1] There is no merit in appellant's contention that there was no finding of the ultimate fact charged in the specification hereinbefore stated. Preliminarily to his consideration of the several specifications, the referee stated: "I do find the facts to be as follows." Then follow his findings upon the first two specifications, which he recommended should be overruled. The finding upon the specification under consideration is introduced by the statement that in the referee's judgment it should be upheld, and a discharge denied. Immediately after this expression the referee states as a fact that, although the bankrupt

was present on two occasions for examination before him and had ample opportunity to co-operate with the trustee in an effort to ascertain the reason for the shortage or shrinkage in his stock, "he has made no explanation of the same, and I find that there was a shortage," etc., as hereinabove stated.

[2] Appellant argues that, if there was a finding, it is not sustained by the evidence. We think it was. The record shows that Heilbronner kept a store at Yuba City, Cal., and on May 23, 1925, in a statement to the Board of Trade, showed in his possession, goods, wares, and merchandise of the value of $14,822.07; fixtures, $3,122; accounts receivable, $1,763; a total of $19,706—with liabilities to merchandise creditors of $8,920; to a bank, $400; a total of $9,320. In the same statement he said his average monthly sales were $1,825, and that according to his daily sales records he estimated his profit at 40 per cent. In May, 1925, it appears, Heilbronner's creditors were trying to work out a way by which he could carry on his business and satisfactorily meet his financial obligations. They wanted him to pay them $1,000 a month, but Heilbronner protested, whereupon his creditors, after considering his record and good reputation prior to going into business at Yuba, and the length of time it would take him to pay his debts, concluded that they would get 100 cents on the dollar, and agreed to accept payments of $750 a month.

On August 5, 1925, or less than three months after the statement referred to was made, Heilbronner abandoned his business and left Yuba, without telling any one of his intention to go, and without leaving any address. Some weeks before he left Yuba, he employed the Daniel Boone Sales Company to take charge of his business. He testified that the reason he took that step was falling off of sales. The Sales Company continued in charge until about August 12. On August 26, an inventory of the stock found in Heilbronner's store showed merchandise of the value of $4,824; fixtures, $2,916. Some time afterwards Heilbronner was found in Portland, and in due course testified before the referee in bankruptcy. Among other things he said that the apparent shrinkage in the value of his assets as shown in the statement of May 25, after allowing for expenses and without taking into consideration any profits, was approximately $2,000, which he could not account for. He added that he did not take up the matter with his creditors, because they had set an amount of $750 which he must pay monthly, and he had told them he

"could not go through" with it. Heilbronner made no entries in his cash book after June 21. In referring to that fact, he testified that he kept the tags and put them in his desk, and that when he had time he would go through and check up the tags, and enter them in the books at his leisure, but that he did not have time to give the matter attention after June 21, when the sale was being carried on.

In behalf of the bankrupt, stress is put upon that portion of his testimony wherein he stated that between May and August, 1925, he bought $2,414 worth of merchandise, for which he paid cash from the receipts of the business; $100 express charges on that merchandise; $779 on postdated checks outstanding at the time of the inventory in May; $1,058 which he drew for personal use; $200 paid on a new automobile, bought shortly before he left Yuba; $1,125 paid to one Haines, the Boone Company salesman; $100 to Mrs. Haines for services; $1,125 to the Board of trade between June 16 and July 24; $286 to a clerk during the sale; miscellaneous cash expenses, $124; miscellaneous, $2,445; to the bank, $502; taxes, $185; and $200 cash taken when he left Yuba.

Heilbronner did not attempt to explain the two items under the head of "miscellaneous," totaling $2,569, and obviously the payment of $200 on an automobile for his personal use was improper under the circumstances, as was the taking of the $200 cash just before he decamped. The result is that, even under a favorable view of his testimony as to many of the sums he says he should be credited with, there was a material shortage wholly unaccounted for.

The law, of course, is that suspicious circumstances are not by themselves enough to warrant denial of a discharge. But when a merchant of apparent intelligence, who is struggling to avoid imminent business failure, and is under an agreement to pay certain monthly sums to his creditors, suddenly drops the custom of making entries in his cash book, draws money out of the business to make a payment on a new automobile for his pleasure, abandons his store, and leaves the town without notifying his creditors, or those in charge of his failing business as to where he is going, and later, in proceedings upon application for his discharge, admits that he cannot account for a shortage of several thousand dollars, which occurred within three months next before he left for parts unknown, suspicion and conjecture must give way to the only reasonable inference; i. e., that the bankrupt is not making a full dis-

closure in good faith, but with intent to conceal his financial condition, has failed to account for assets in his possession shortly before his bankruptcy, and has knowingly removed or concealed or has permitted to be removed or concealed, some of his property with intent to hinder, delay, and defraud his creditors, and is endeavoring to use the bankruptcy law to aid him in obtaining an acquittal of his honest obligations. In Re Gottlieb, 262 F. 730, 733, Judge Hough, for the Circuit Court of Appeals of the Second Circuit, has aptly said: "But intent, being pre-eminently a fact or phenomenon that (barring confession) can never be proved otherwise than by inference, the same facts—i. e., acts and documents—which cast the burden of explanation or evidence upon the bankrupt also cast on him the burden of disproving the intent of doing those things which are inevitable and natural consequences of said acts and documents." Black on Bankruptcy, § 701; Remington on Bankruptcy, §§ 3253, 3408; In re Finkelstein (D. C.) 101 F. 418; In re Loeb (C. C. A.) 232 F. 601; In re Brincat (D. C.) 233 F. 811.

We see no reason for disturbing the finding of the referee, as affirmed by the District Court.

The order appealed from is affirmed.