Garsh, J.
Plaintiffs, Casmar, Inc. (“Casmar”), Antonio C. Castelo (“Castelo”), and Manuel T. Pereira (“Pereira”) brought an action in 1991 seeking injunctive relief prohibiting the defendant Manuel V. Correia (“Correia”) from interfering with Casmar’s right to occupy certain premises in Acushnet, Massachusetts. Correia counterclaimed. In 1992, Casmar and Castelo filed a second action seeking monetary damages arising out of alleged breaches to a lease agreement. Correia now moves for summary judgment seeking dismissal of the 1992 action[1] on the grounds that his discharge in bankruptcy prohibits Casmar and Castelo from prosecuting the 1992 suit and seeking a ruling that his right to maintain the counterclaim was preserved in the bankruptcy proceeding. Casmar and Castelo oppose dismissal of their compliant on the ground the discharge is not effective as to them. In addition, Casmar, Castelo, and Pereira cross move for summary judgment, seeking dismissal of the counterclaim in the 1991 action on the ground that this claim remains the property of the estate. For the reasons set forth below, Correia’s motion for summary judgement is denied and the motion for summary judgment by Casmar, Castelo, and Pereira is allowed.
BACKGROUND
On June 6, 1991, Casmar, Castelo, and Pereira commenced an action which alleges that Castelo and Pereira are the owners and operators of a restaurant located at 97 Main Street, Acushnet, Massachusetts, on property leased by Casmar from Correia. The complaint alleges that Casmar was wrongly evicted and sought a determination of Casmar’s right to occupy the premises at 97 Main Street and an injunction restraining the defendant from interfering with Casmar’s right to occupy the Main Street premises. Before this suit was filed, as alleged in the complaint, on May 6, 1991, Correia had filed a petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Massachusetts, case Number 91-13909. Casmar had actual notice of that proceeding; Casmar received a notice to creditors from the Bankruptcy Court.
In his counterclaim, filed on June 14, 1991, Correia alleges that the plaintiffs violated the lease agreement in various ways. More specifically, the counterclaim alleges that the lease period ran from May 1, 1990 through April 30, 1991 and that the plaintiffs failed to pay the monthly rent of $2400 during that period. The counterclaim also alleges that the plaintiffs failed to maintain insurance on the premises and to pay real estate taxes, outstanding bills, and other expenses. Correia further claims that he was obligated to expend funds to repair the premises and that he lost the opportunity to put a new tenant into the premises during the continued occupancy of the premises after the lease had expired. The counterclaim seeks judgment in the aggregate amount of $300,000. On October 17, 1991, the counterclaim was amended to add an allegation that the defendants owe Correia $15,000.00 arising out of their transfer of an All-Alcoholic Beverage License. The counterclaim seeks an award of $300,000 against the defendants for their failure to take steps to cause the All-Alcoholic Beverage License to be re-issued, the damages and waste “brought to the property” by the plaintiffs, and the articles of personal property owned by Correia wrongfully removed from the property. Rent is not mentioned.[2]
The Chapter 11 petition was dismissed on February 25, 1992. Correia, an officer of Casmar, understood that it had been dismissed. In August of 1992, Casmar and Castelo filed a second suit; the complaint alleges that Correia breached the terms of the lease and seeks monetary damages in excess of $25,000. The complaint also sets forth a claim under G.L.c. 93A, §11 based on the allegation that the obligations under the lease were entered into with knowledge that Correia did not intend to perform those obligations.
On January 20, 1993, Correia filed a voluntary petition under Chapter 7 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Massachusetts, Bankruptcy Petition No. 93-10498. On February 3, 1994, Correia was discharged from bankruptcy pursuant to an order of the Bankruptcy Court. Neither Casmar nor Castelo were listed as creditors on Schedule F, filed with the Bankruptcy Court, listing all creditors holding unsecured non-priority claims or on any other schedule of creditors filed in the 1993 bankruptcy proceeding. Furthermore, no suggestion of bankruptcy was filed in this action with this court. The evidence is undisputed that neither Casmar nor Castelo had actual notice of the 1993 bankruptcy proceeding prior to the discharge. Under the category “accounts receivable” on Schedule B, the personal property schedule filed with the Bankruptcy Court, Correia listed “rent owed by lessee of barroom at Main Street, Acushnet.” The 97 Main Street address is not provided; the location is given as “(i]n debtor’s possession.” There is nothing in the schedules to indicate that 97 Main Street was owned by Correia when the 1993 petition was filed. The market value of the account receivable was listed as “1.00,” but Correia did state that “(t]he debtor has a claim for about $40,000.00 fro [sic] rent of a barroom he leased.” Neither the counterclaim for unauthorized transfer of a liquor license nor the counterclaim seeking damages for failure to obtain insurance, failure to pay taxes, bills, and other expenses, repair costs, and occupancy charges were listed as an asset of the debtor. Indeed, in response to question 20 on Schedule B, unambiguously requiring specification of any not otherwise listed “contingent and unliquidated claims of every nature, including . . . counterclaims of the debtor . . .,” Correia listed only an unrelated tort claim against a contractor for injuries sustained in a fall.[3] When he filed the schedules, Correia executed a dec *404 laration under penalty of perjury that the information provided is true and correct. The Statement of Financial Affairs, filed by Correia with the Bankruptcy Court on April 2, 1993, does not list either the 1991 or the 1992 lawsuit, despite the Statement’s explicit directive to “[I]ist all suits to which the debtor is or was a parly within one year immediately preceding the filing of this bankruptcy case.”[4] Correia executed a declaration, under penalty of perjury, that the Statement of Financial Affairs was true.[5]
DISCUSSION
Summary judgment shall be granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving parly bears the burden of affirmatively demonstrating the absence of a triable issue and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party is unlikely to submit proof of that element at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). The nonmoving party’s failure to prove an essential element of its case “renders all other facts immaterial” and mandates summary judgment in favor of the nonmoving party. Kourouvacilis v. General Motors Corp., 410 at 711 (1991) (citing Celotex v. Catrett, 477 U.S. 317, 322 (1986)).
1992 Complaint Jurisdiction
Correia seeks dismissal of the 1992 complaint on the grounds that his 1994 discharge from bankruptcy operates as an injunction against any further efforts to collect a pre-petition debt, such as that asserted in the complaint. His motion for summary judgement states that “this Court lacks jurisdiction over issues related to the now dismissed bankruptcy proceedings such as notice or lack thereto ...” and that “the injunction pursuant to 11 U.S.C. §524 and its chilling effect on plaintiffs’ claims cannot be challenged in this forum.” In response to the opposition by Casmar and Costello arguing that their complaint survives because Correia failed to list them as creditors in the bankruptcy proceeding, Correia, who has not sought to reopen the closed bankruptcy case, contends that “all bankruptcy issues, such as those regarding notice and dischargeability of debts, must be addressed in the proper forum, that being the United States Bankruptcy Court in and for the District of Massachusetts . . .” and that “[t]his court has no jurisdiction to interpret and apply bankrupey [sic] laws to the facts of this case.” Correia’s jurisdictional argument is wholly lacking in merit.[6]
Determination of dischargeability under 11 U.S.C. §523(a)(3) may be made as part of litigation outside the bankruptcy court. The Bankruptcy Court has concurrent, but not exclusive, jurisdiction to hear such questions of dischargeability. If a creditor pursues a lawsuit on a claim that the debtor believes has been discharged, the debtor can assert the bankruptcy discharge as an affirmative defense and the court with jurisdiction over the lawsuit then can decide whether the debt has, indeed, been discharged. See, e.g., Waus v. Ellithorpe, 135 F.2d 1, 3 (1st. Cir. 1943) (“The bankruptcy court is interested primarily in the speedy settlement of the bankrupt’s estate, and we do not believe that the bankruptcy court should be required to stop and hear testimony on whether various creditors have debts which are not dischargeable”); In re Devereaux, 76 F.2d 522, 523 (2d Cir. 1935) (“in general the effect of a discharge is to be raised by pleading it as a bar when the creditor attempts to enforce his claim” in state court); In re Thibodeau, 136 B.R. 7, 10 (Bkrtcy. D. Mass. 1992) (issue of dischargeability need not be litigated in the Bankruptcy Court, but can be adjudicated in Superior Court proceeding); In Re Iannacone, 21 B.R. 153, 155 (Bkrtcy. D. Mass. 1982) (debtor’s desire to litigate dischargeability in the bankruptcy court rather than the state court is insufficient reason to reopen the “bankruptcy case”). See also Advisory Committee’s Note (1983) to Bankruptcy Rule 4007 (jurisdiction to determine dischargeability under §523(a)(3) “is held concurrently by the bankruptcy court and any appropriate nonbankruptcy forum”).
In sum, this court is not only an appropriate forum, but it is the preferred forum in which to resolve the question of dischargeability of the claims asserted in the 1992 complaint.
Effect of Discharge on Plaintiffs’ Status as Creditors
It is undisputed that the claims set forth in the 1992 action arose prior to the filing of the petition for bankruptcy on January 20, 1993. It is undisputed that the time for filing a proof of claim has long since passed. It is undisputed that Correia knew the identity of the plaintiffs since their complaint seeking money damages from him was pending at the time he filed the bankruptcy petition.[7] It is undisputed that neither of the plaintiffs was ever listed as a creditor[8] in the bankruptcy proceeding. A debtor, such as Correia, is required by 11 U.S.C. §521(1) to “file a list of creditors, and unless the court orders otherwise, a schedule of assets and liabilities, a schedule of current expenditures, and a statement of the debtor’s financial affairs.”[9] There is no suggestion that the Bankruptcy Court ordered otherwise. The plaintiffs were not listed on any of the schedules and the existence of their suit was not disclosed. It is undisputed that neither *405 Casmar nor Castelo had notice or actual knowledge of the bankruptcy case in time for timely filing of a proof of claim.[10]
Pursuant to 11 U.S.C. §524(a)(2), a discharge from bankruptcy generally' serves as a permanent injunction prohibiting creditors with pre-existing claims from pursuing collection efforts.[11] Section 523, however, creates a number of exceptions to discharge, one of which, 11 U.S.C. §523(a)(3),[12] turns on whether a debt was properly listed. A discharge does not operate to bar the collection of a pre-existing debt if the creditor, whose name is known to the debtor, is not listed or scheduled in time to permit timely filing of a proof of claim unless such creditor had notice or actual knowledge of the case in time for such timely filing. 11 U.S.C. §523(a)(3).[13]
The burden of proving discharge rests on the defendant as the party alleging it as a defense to the complaint. Smith v. Hill, 232 Mass. 188, 191 (1918), aff'd, 260 U.S. 592 (1919). Correia’s discharge is the sole basis for his seeking dismissal of the complaint.[14] “A mere proffer of a discharge in bankruptcy, without facts to show that an unscheduled creditor by the terms of the act became subject to the jurisdiction of the bankruptcy court, does not make the discharge effective as to such creditor.” Id. at 193. This record reveals no facts which show that the plaintiffs, who are unscheduled creditors by the terms of the act, became subject to the jurisdiction of the bankruptcy court. Accordingly, the discharge is not effective as to them and Correia is not entitled to dismissal of their complaint.
1991 Counterclaim
Correia seeks an order “preserving” his counterclaim in the 1991 action. Casmar, Castelo, and Pereira oppose on the ground that the counterclaim was not abandoned and, therefore, remains the property of the bankrupt estate. Pursuant to 11 U.S.C. §554(c), “(u)nless the court orders otherwise, any property scheduled under section 521(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor ...” Correia does not contend that the Bankruptcy Court ordered otherwise.
The Bankruptcy Act “requires the fullest disclosure, the utmost good faith, the surrender of all [the debtor’s] estate not exempt by the act.” In re Breitling, 133 F. 146, 148 (7th Cir. 1904). An unscheduled asset remains property of the bankrupt estate, and the debtor loses all rights to it. See, e.g., First Nat'l Bank v. Lasater, 196 U.S. 115, 118-19 (1905) (a bankrupt cannot withhold knowledge of the existence of a claim, obtain a release from his debts, and then assert title to unscheduled property); Vreugdenhill v. Navistar Int’l Transportation Corp., 950 F.2d 524, 526 (8th Cir. 1991) (debtor who failed to formally schedule potential claim cannot pursue that claim after discharge even if trustee had actual knowledge, through other means, of the claim).
Correia failed to list the counterclaim in schedule B requiring a listing of all counterclaims, and he failed to list the lawsuit in the Statement of Financial Affairs requiring a listing of all pending lawsuits. During oral argument, Correia conceded that he may not go forward on that portion of his counterclaim and amended counterclaim that seeks damages for plaintiffs’ purported failure to maintain insurance on the premises and to pay real estate taxes, outstanding bills, and other expenses, and that he may not prosecute further his counterclaim that the plaintiffs caused him to expend funds to repair the premises or his claim that, as a result of their wrongful actions, he lost the opportunity to put a new tenant into the premises during the continued occupancy of the premises after the lease had expired. Finally, Correia concedes that he may not go forward with his counterclaim seeking damages in connection with the plaintiffs’ transfer of the All-Alcoholic Beverage License. At this stage, Correia seeks only to proceed with that portion of his original counterclaim seeking damages by virtue of plaintiffs’ alleged failure to pay rent. Correia contends that, although he failed to disclose the rent claim as a counterclaim or to reveal the existence of the pending lawsuit in which he had asserted the counterclaim, he nevertheless did schedule it sufficient to meet the requirements of 11 U.S.C. §521(1) by virtue of the description provided under the account receivables category on schedule B.
That description failed to include the names of the debtor lessees, all of whom were known to Correia, and it failed to include the specific address of the leased property. The market value of the account receivable is listed as only one dollar, although the claim is stated to be one for about forty thousand dollars for rent of barroom leased by Correia. The degree of specificity required in the listing of assets has not been well-delineated. The 1991 Advisory Committee Notes to Schedule B state that the “schedules require complete listing of assets and liabilities but leave many of the details to investigation by the trustee.” It thus appears that the incomplete listing of the accounts receivable rental claim by Correia is sufficient, albeit barely so, to satisfy the scheduling prong of 11 U.S.C. §554(c).
It does not follow, however, that Correia is automatically entitled to pursue the rent claim. Section 554 requires more than the mere scheduling of property. Property of the estate that is not abandoned and that is not administered in the case remains property of the estate. 11 U.S.C. §554(d). “That a bankrupt cannot bring suit on a right of action that has vested in his trustee, absent abandonment of the cause of action by the trustee or specific approval by the bankruptcy court of such a suit, is certain.” Riverside Memorial Mausoleum v. Umet Trust, 469 F.Sup. 643, 644 (E.D. Penn. 1979).
Correia points only to the trustee’s failure to have prosecuted the rent claim before his discharge. The *406 mere failure of the trustee to have asserted a cause of action against Casmar, Castelo, and Pereira is not sufficient, in and of itself, to establish that the action was abandoned and that Correia, therefore, has aright to maintain it. Dallas Cabana, Inc. v. Hyatt Corp., 441 F.2d 865, 868 (5th Cir. 1971) (without authorization from the Bankruptcy Court “or clear manifestation of the trustee to abandon the claim,” a debtor may not maintain a cause of action).[15] Abandonment by a trustee results where the evidence demonstrates not only a failure to administer property but also an intent to abandon that property. See In re Yalden, 109 F.Sup. 603, 604 (D. Mass. 1953) (“Mere inaction with respect to the properly is not enough, but it is sufficient if the trustee clearly indicates his intention to abandon the property as valueless’’); In re Malcolm, 48 F.Sup. 675, 679 (E.D. III. 1943) (failure formally to abandon coupled with proof of trustee’s intent to abandon is sufficient but merely closing proceedings without formal abandonment does not constitute abandonment where the evidence does not also reflect an intent to disclaim). Nothing in the record gives rise to an inference that the trustee actually intended to abandon a $40,000 claim for rent due and owing. Indeed, in light of the debtor’s misleading characterization of the account receivable as having a market value of one dollar coupled with Correia’s failure to disclose the fact that the account receivable was actually the subject of a pending counterclaim, any such inference would be particularly unwarranted. Accordingly, no part of the counterclaim or amended counterclaim may be prosecuted.
ORDER
For the forgoing reasons, it is hereby ORDERED that the defendant Manuel V. Correia’s Motion for Summary Judgment seeking the dismissal of the complaint in Civil Action No. 92-01661 be, and hereby is, DENIED and that the plaintiff-in-counterclaim Manuel V. Correia’s Motion for Summary Judgment seeking an order preserving his counterclaims in Civil Action No. 91-01126 be, and hereby is, DENIED. It is further ORDERED that the Cross-Motion for Summary Judgment by the defendants-in-counterclaim Casmar, Inc., Antonio C. Castelo, and Manuel T. Pereira seeking the dismissal of the counterclaims in Civil Action No. 91-01126 be, and hereby is, ALLOWED and that judgment shall enter dismissing said counterclaims.

 The relief sought by the plaintiffs in the 1991 action became moot and that complaint has been dismissed.

 Correia takes the position that the amendment was not intended to eliminate any claims for items of damages set forth in the original counterclaim.

 The claims against Casmar, Castelo, and Pereira were not claimed as exempt property on Schedule C.

 Three other pending suits were listed.

 This court has taken judicial notice of the following public records filed in the Chapter 7 Bankruptcy Court Proceeding and not submitted by the parties: Statement of Financial Affairs and the declaration accompanying the Summary and Schedules.

 Correia cites no authority in support of his claim that this court lacks jurisdiction to adjudicate the dischargeability issue.

 Correia filed a motion to dismiss the complaint on September 15, 1992. It was denied.

 A creditor includes any entity that has a claim against the debtor that arose before the order for relief concerning the debtor. 11 U.S.C. §101(10)(A).

 Bankruptcy Rule 1007(b) also provides: 'The debtor . . . shall file with the court schedules of assets and liabilities, a statement of financial affairs . . . unless the court orders otherwise.”

 At the hearing, plaintiffs obtained permission to file late an affidavit by Castelo to the effect that Casmar and Costelo had no actual notice of the Chapter 7 bankruptcy petition until 1995, after Correia had been discharged. Correia’s attorney conceded that he had no proof that the plaintiffs had actual notice.

 11 U.S.C. §524(a) provides that a discharge “operates as an injunction against the commencement or continuation of any action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived."

 Section 523(a)(3) provides, as follows:
(a) A discharge under [the Bankruptcy Code] . . . does not discharge an individual debtor from any debt—
(3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—
(A) if such a debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or
(B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request.

 The plaintiffs’ chapter 93A claim may fall within section 523(a)(3)(B) as a paragraph (2) debt arising out of fraud. It is not necessary to reach that issue because a section 523(a)(3)(B) debt, to qualify for discharge, must be listed in time to permit both the timely filing of a proof of claim and the timely request for a determination of dischargeability of such debt. Where, as here, the debt was not listed in time for a timely filing of a proof of claim, the distinction between sections 523(a)(3)(B) and section 523(a)(3)(A) is unimportant.

 The motion for summary judgement seeking dismissal by reason of discharge cites no case law and fails to call the court’s attention to 11 U.S.C. §523(a)(3)(B). See Superior Court Rule 9A(a)(l) ('The moving party shall serve with the motion a statement of reasons, including supporting authorities, why the motion should be granted”).

 Correia did not petition for an Order of Abandonment and he did not receive specific approval by the Bankruptcy Court to retain his rental claim.