### POFF v. ADAMS, PAYNE & GLEAVES, Inc., et al.

(Circuit Court of Appeals, Fourth Circuit.   September 15, 1915.)

#### No. 1344.

1. BANKRUPTCY ☞414—DISCHARGE—BURDEN OF PROOF.

Creditors opposing a bankrupt's discharge have the burden of proving by satisfactory evidence the charges of fraudulently transferring or concealing property with intent to hinder, delay, or defraud creditors.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 720–722; Dec. Dig. ☞414.]

2. APPEAL AND ERROR ☞1022—REVIEW—FINDINGS.

Findings of fact by the special master and District Court will not be disturbed, unless clearly unsupported by the evidence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4015–4018; Dec. Dig. ☞1022.]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. BANKRUPTCY ☞414—DISCHARGE—RIGHT TO—EVIDENCE.
   Evidence *held* to show that bankrupt, applying for his discharge, had transferred property with intent to hinder, defraud, and delay creditors, and had made a false oath as to such property.
   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 720–722; Dec. Dig. ☞414.]

Appeal from the District Court of the United States for the Western District of Virginia, at Roanoke, in Bankruptcy; Henry C. McDowell, Judge.

In the matter of the discharge of W. E. Poff, bankrupt. On objections by Adams, Payne & Gleaves, Incorporated, and others, to a discharge of the bankrupt. From an order confirming the report of the master sustaining the objections, the bankrupt appeals. Affirmed.

G. H. Penn, of Roanoke, Va. (S. D. Shackleford, of Roanoke, Va., on the brief), for appellant.

Beverly Berkeley, Mercer Hartman, and E. W. Poindexter, all of Roanoke, Va. (Poindexter & Hopwood, of Roanoke, Va., on the brief), for appellees.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

WOODS, Circuit Judge. W. E. Poff, a veterinary surgeon, was adjudicated a bankrupt February 8, 1913. On March 7, 1913, the referee took the testimony of the bankrupt as to his affairs, and on September 23, 1913, made his final report to the effect that the bankrupt had complied with all the requirements of the Bankrupt Law, and that he had not committed any of the offenses prohibited in section 14b of the act. The bankrupt filed his petition for discharge January 27, 1914. On March 5, 1914, Adams, Payne & Gleaves, creditors, filed these objections to the discharge:

"(1) At a time subsequent to the first day of the four months immediately preceding the filing of his petition in bankruptcy, said bankrupt transferred, removed, and concealed, and permitted to be removed and concealed, certain of his property, with intent to hinder, delay, and defraud his creditors.

"(2) That the said bankrupt, with intent to conceal his financial condition failed to keep books of account or records from which such condition might be ascertained.

"(3) That while under oath before the referee herein he made numerous statements, too numerous to be embodied in these specifications, but more fully set forth in the transcript of the evidence in this case, and that such statements were knowingly false when made."

The District Court referred the controversy to R. Q. Mosby as special master, who took testimony and made a report sustaining the first and third objections to the discharge; and the court confirmed the report.

[1, 2] Creditors opposing a discharge have the burden of proving by satisfactory evidence the charges against the bankrupt of transferring or concealing his property with the intent to hinder, delay, or defraud creditors; but the findings of fact by the special master and the District Court will not be disturbed by this court, except upon the clearest conviction that the findings are not supported by the evidence. In

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

re Hoffman (D. C.) 173 Fed. 235; In re Hatem (D. C.) 161 Fed. 896; In re Noyes Bros., 127 Fed. 286, 62 C. C. A. 218; In re Schulman, 177 Fed. 191, 101 C. C. A. 361; In re Buckingham v. Estes, 128 Fed. 584, 63 C. C. A. 20; Osborne v. Perkins, 112 Fed. 127, 50 C. C. A. 158.

[3] The decision depends upon the view to be taken of transactions between Poff, the bankrupt, and W. C. Horton, one of his creditors. Poff had leased a stable from Horton for five years at a rental of $60 a month. The lease had three years more to run, and some rent was overdue. The rent for his dwelling was also in arrears. In this condition of things on February 1, 1913, Poff had all his household furniture moved to the stable; his explanation being that the landlord of his dwelling had notified him to vacate. On February 3d, Horton had a distress warrant for rent overdue levied on all the property in the stable, including the household furniture. On the same day Poff, in pursuance of a verbal understanding with Horton, wrote him a letter setting out his embarrassed condition and proposing that Horton should take all the property levied on in satisfaction of his overdue rent and cancel the lease contract. This proposition was accepted by a formal note from Horton of the same date. Horton and Poff testified that early in January, 1913, Poff had sold to Horton, for credit on the rent account, a colt and buggy of the value of about $75, and at the same time transferred to him book accounts of the face value of $1,272.70. Poff had before this paid up his rent to October 1, 1913, and he owed Horton nothing on any other account. He testified that the total arrears of rent was $180 at the date of the seizure under the distress warrant, and Horton admitted it could not have exceeded $240 from October 1, 1912, the date of the last settlement. Poff appears to have continued in the use of the stable, paying rent for it.

The bankrupt claims to have turned over all the property levied on, the colt and buggy and all of his accounts, in payment of rent then due, not exceeding $240, and the discharge of liability for the unexpired period. All of the property was left in the hands of Poff, and the evidence is clear that he went on using it, just as if it were his own. He has collected on the accounts since the filing of the petition in bankruptcy $350 to $400, and apparently used all of it by Horton's consent; for Horton testified he had received nothing from Poff, and that he had never even made an inquiry about the chattels or the money collected. There was evidence to the effect that about $200 more could be collected by Poff. Every item of property was held, appropriated, and used by Poff just as if there had never been a transfer to Horton. All this is undisputed. The explanation offered by Horton, that he desired to assist Poff on account of his misfortunes, is inconsistent with the vigilance he exhibited in pressing his claims until he had obtained control of the property, and had placed it, as he supposed, beyond the reach of other creditors. In addition to these facts, the witness W. W. Huff, a creditor, testified that Poff, in telling him of his purpose to go into bankruptcy, expressed the intention to move the furniture to the stable beforehand, so that Horton could hold it, and also the intention to have Horton, and not the

bankrupt court, to handle his accounts. This interview is denied by Poff, but Huff's account was accepted by the master, who had the witnesses before him.

Laying to one side the testimony of Huff, the undisputed evidence shows: First, Poff transferred to Horton within the statutory period practically all his tangible property; second, Poff remained in possession of the property, using and consuming it in all respects as if no transfer had been made; third, Horton has not asked for an accounting, and has not taken any interest whatever in the chattels or in the collections of money by Poff, which would be his property if the transaction had been made in good faith; fourth, no interest in the property was scheduled by the bankrupt.

These undisputed facts, made more significant by the testimony of Huff, tend to show the intent of Poff and Horton to transfer the property to Horton as a means of allowing Poff to have the full benefit of it to the exclusion of his creditors, and also the pretensive and fraudulent nature of the alleged transfer. There is strong reason in the evidence to sustain the finding of the special master and the District Judge. We cite only a few of the cases in which discharge has been refused under similar circumstances. In re Breitling, 133 Fed. 146, 66 C. C. A. 212; In re Quackenbush (D. C.) 102 Fed. 282; Pirvitz v. Pithan, 194 Fed. 403, 114 C. C. A. 365. In re Graves (D. C.) 189 Fed. 847; Remmers v. Merchants'-Laclede Nat. Bank, 173 Fed. 484, 97 C. C. A. 490.

The special master finds that the only false oath made by the bankrupt was his statement on examination before the referee that he had no property, so far as he knew, not put in the schedule. From the conclusion that the transfer to Horton was pretensive, and a concealment of his property with intent to defraud creditors, it follows that the special master's finding, confirmed by the District Court, that Poff had made a false oath as to his property, must be sustained. In re Breitling, supra; In re Gailey, 127 Fed. 538, 62 C. C. A. 336.

Affirmed.