Am. Bankr. Rep. 194, 156 Fed. 863. Upon this principle it was held, in Re Hildebrant (D. C.) 10 Am. Bankr. Rep. 184, 120 Fed. 992:

"That a vendor could not affirm the contract of sale as to part of the goods, and claim the price and disaffirm as to another part, and recover the goods in specie."

And, having made his election under such circumstances, the vendor makes it once for all. This, of course, implies knowledge of his rights and full possession of the required facts. If, after reserving their right, as indicated in their proof of claim, to follow the goods on discovery of certain facts, it would have been afterwards made to appear that such particular facts had been ascertained, and having indicated a desire to change about from an affirmance of the contract to a rescission of the same, the case might be held in line with what was decided in Thomas v. Taggart, 209 U. S. 392, 28 Sup. Ct. 519, 52 L. Ed. 845, where it was held that proof of claim of a customer against a broker, including value of securities deposited as collateral, does not amount to a waiver of his right to recover possession of the specific stocks, after discovery that the shares had been returned to the assignee in bankruptcy, where his claim specifically states that he does not waive such right of possession.

The situation before us is not of a change of remedies founded upon after-discovered facts as made to appear when the petition to reclaim was filed, but to the fact that the petitioners deliberately had elected a remedy inconsistent with the claim they now make without assigning any reason therefor, notwithstanding the statement of the learned referee that "the claimants, within a period of two weeks after their claim had been filed, giving knowledge of the fraud perpetrated upon them, they instituted these reclamation proceedings." There is nothing in the petition or the proof adduced supporting this finding, but the bare fact that a petition to reclaim was presented based on allegations of fraud, which in my opinion, under the circumstances, is not sufficient to warrant the conclusion.

In view of what has been indicated, it will not be necessary to discuss the original title of claimants to the goods sought to be reclaimed, which, to the greater portion, by a cursory examination is revealed as very doubtful.

The order of the referee is reversed, and the petition is dismissed.

---

## In re WIX.

(District Court, W. D. South Carolina. July 3, 1916.)

1. BANKRUPTCY &#8701;409(1)—DISCHARGE—CONCEALMENT OF TRUE FINANCIAL CONDITION.

    Where a bankrupt, during the ten years he had been in business, and during part of which he had been prosperous, kept his books in the same slipshod manner, he will not, on bankruptcy, be denied discharge on the ground that his method of keeping books prevented the ascertainment of his true financial condition; for it cannot be assumed that he in-

tended to keep his books in such a manner as to conceal his financial condition.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 752–757; Dec. Dig. 🔑409(1).]

2. BANKRUPTCY 🔑414(1)—DISCHARGE—RIGHT TO.

As the discharge in bankruptcy is a very great privilege and right, the burden rests on a creditor, objecting to a discharge, to show that the bankrupt is not entitled thereto.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 720; Dec. Dig. 🔑414(1).]

3. BANKRUPTCY 🔑409(1)—DISCHARGE—KEEPING BOOKS.

Under Bankruptcy Act July 1, 1898, c. 541, 30 Stat. 544, one is not required to keep any books at all in order to obtain a discharge, and a bankrupt, no matter how irregularly or poorly kept his books may be, will not be denied discharge, unless his intent was to conceal his true financial condition.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 752–757; Dec. Dig. 🔑409(1).]

In Bankruptcy. In the matter of bankruptcy of John W. Wix. On exception to the report of the special master, recommending that the bankrupt be denied discharge. Report of master overruled, and bankrupt ordered discharged.

Marion & Marion, of Chester, S. C., for trustee in bankruptcy.
Gaston & Hamilton, of Chester, S. C., for bankrupt.

JOHNSON, District Judge. This cause came on to be heard upon exceptions to the report of the special master, C. W. F. Spencer, Esq., recommending that the bankrupt be not allowed his discharge. This is a very interesting case, and I should like to go into it at length, but the pressure of work makes that impossible. An expert accountant testified that he could not ascertain the bankrupt's financial condition from an examination of his books. The special master, in a very able and interesting report, concluded that a man was presumed to intend the natural consequences of his act, and that, inasmuch as the bankrupt had not kept such books as would enable an accountant to ascertain his real financial condition, he must be presumed to have intended the natural consequences of his act, to wit, to deceive his creditors as to his financial condition.

[1-3] Ordinarily the special master, having had the witnesses before him, has a very great advantage in determining facts. In this case, however, I do not think there is any dispute about the facts, and the only question is, What is the proper inference to be drawn from undisputed facts? I think that the fact that Wix had been in business for about ten years, and that during all of that time he had the same method or lack of method of keeping books, refutes the presumption that he adopted that method for the purpose of deceiving his creditors as to his real financial condition. I cannot believe that when he first went into business and during all the years of his prosperity he had any purpose in his mind to deceive and conceal his true financial condition. If that purpose and intent did not exist when he adopted that method of keeping books ten years ago, there

🔑For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

is nothing in the record to show that he subsequently formed that intent.

The discharge is a very great privilege and right. The theory of the bankruptcy law is that a citizen who has become overburdened shall not try to go through life bearing burdens that will crush him, but he may come into the bankruptcy court and surrender all, and when that all is distributed among the creditors, he is free, the slate is wiped out, and he can start life over again. Like the Hebrews of old, it is to him a day and a year of Jubilee.

I think, therefore, that the burden rests upon the creditor objecting to his discharge to show that he is not entitled to it; and, as I have already said, I do not think the evidence in this case justifies the conviction that during his entire business career John W. Wix intended to conceal his true financial condition. The inference I draw from the evidence is that he was careless; he had a very poor method of keeping books. The bankruptcy law does not require any particular method of bookkeeping; in fact, it does not require a man to keep books at all. The only provision of the law is that he must not adopt a method of keeping books for the purpose of concealing his true financial condition. No matter how irregularly or poorly kept his books may be, if the evidence does not show that his intent was to conceal his true financial condition, he is entitled to his discharge.

I feel constrained to overrule the report of the special master; and it is so ordered. Let the clerk of this court issue to the bankrupt, John W. Wix, his discharge in bankruptcy.

---

RICHMOND CEDAR WORKS v. STRINGFELLOW et al.

(District Court, E. D. North Carolina. September 20, 1916.)

1. EVIDENCE ⬤⟰343(3)—CERTIFIED COPIES—ADMISSIBILITY.

Under Revisal N. C. 1905, § 988, declaring that a duly certified copy of any deed or writing required or allowed to be registered may be registered in any county, a certified copy of a deed over 100 years old, which showed that the original was a perfect deed of conveyance, is admissible to probate and registration, though by reason of the mutilation of the records some lines of the conveyance showing the consideration therefor were lost; this being particularly true where an earlier certified copy of the same conveyance included the destroyed portions.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1317, 1318; Dec. Dig. ⬤⟰343(3).]

2. EVIDENCE ⬤⟰343(3)—DOCUMENTARY EVIDENCE—ANCIENT INSTRUMENTS.

In an action to recover land, plaintiff introduced a certified copy of a deed about 100 years old reciting that Elisha Hassell had sold and conveyed the property. In the attestation clause the name of the grantor was written Elijah, and the signature, which was by mark, was Elijah. On the certified copy was an indorsement that the grantor Elijah did therefor warrant and defend, etc., and this purported to be signed Elisha. The same witnesses attested both signatures and the deed was duly proven by one of the attesting witnesses shortly after execution. Held, that it was manifest that the name of the grantor was either incorrectly spelled by the conveyancer or incorrectly copied by the register in recording, and it