### In re BRAUN.

(Circuit Court of Appeals, Second Circuit. January 23, 1917.)

No. 115.

1. BANKRUPTCY ⊕414(1)—DISCHARGE—BURDEN OF PROOF.

In view of the presumption of honesty, creditors opposing a discharge on the ground that the bankrupt had been guilty of a fraudulent transfer of his property have the burden of proof.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 720; Dec. Dig. ⊕414(1).]

2. BANKRUPTCY ⊕468—DISCHARGE—EVIDENCE—SUFFICIENCY.

On appeal from an order denying a bankrupt's application for discharge on the ground that he had, within four months of the filing of the petition in bankruptcy, conveyed his property with intent to hinder and defraud his creditors, *held* that, under the evidence, the order should not be affirmed, but should be remanded for the purpose of taking further testimony.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 930; Dec. Dig. ⊕468.]

Appeal from the District Court of the United States for the Southern District of New York.

---

⊕For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

239 F.—8

In the matter of the bankruptcy of Samuel Braun. From an order denying the discharge of the bankrupt, he appeals. Remanded, with directions.

H. & J. J. Lesser, of New York City (Jacob J. Lesser, of New York City, of counsel), for appellant.

Before COXE, WARD, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge. The question involved in this appeal is the right to a discharge in bankruptcy. On the presentation of the petition of the bankrupt for his discharge, objection was made thereto by two of the creditors, and the matter was referred to a special master, who reported, recommending that the discharge be denied. The specifications of objections to the discharge made by the creditors were six in number. The master reported that in his opinion the charge made in specification No. 3 was established. That specification reads as follows:

•"Upon information and belief that within four months immediately preceding the filing of the petition in bankruptcy herein, said bankrupt transferred to his brother, one Isidor Braun, certain property consisting of $300 in cash, with intent to hinder, delay, and defraud his creditors; that said transfer was accomplished ostensibly for the purpose of paying an alleged debt to the said Isidor Braun, whereas in truth and in fact said bankrupt was not indebted to the said Isidor Braun in any sum whatsoever; and that the said $300 in cash was paid to the said Braun with the intent and purpose of placing the same beyond the reach of creditors, and in order that the said sum might be held in secret trust for the benefit of said bankrupt."

The court below has confirmed the report of the special master and entered the order denying the discharge.

[1] The rule is well established, and is not questioned here, that the opposing creditors have the burden of proof on opposition to discharge. In re Gaylord (D. C.) 106 Fed. 833, affirmed in 112 Fed. 668, 50 C. C. A. 415. The presumption is that men are honest, and one who charges to the contrary must offer clear and convincing proof, if this presumption of the law is to be overcome. The contrary must be shown by a preponderance of testimony. In re Remmers, 173 Fed. 484, 97 C. C. A. 490; Remington on Bankruptcy (2d Ed.) § 2639, volume 3.

[2] The bankrupt was a dealer in flour, selling it by the barrel in small quantities to bakers. He resided in the city of New York and seems to have had no store or place of business. His deliveries were made direct to his customers from the dock, where the flour arrived on consignment. His purchases of flour amounted to about 9,000 or 10,000 barrels a month. He seems to have done business in a very loose way, and the wonder is that one who conducted business as he seems to have done could maintain it for any length of time. Such books as he kept were imperfect, and his wife made most of the entries. He had few, if any, cash customers. In reply to the question whether it was usual to leave entries out of the ledger, he replied:

"Well, it used to happen, maybe I was too busy; I used to be myself the bookkeeper and salesman, and I was everything."

He made entires a week, and sometines two weeks, after transactions occurred. His brother acted as a salesman, and the cash book represented only his brother's collections. He never kept a cash book in which he entered his own collections. The testimony is that the bankrupt paid his brother $300 in cash a few weeks before the petition in bankruptcy was filed; that the brother asked the bankrupt for the money, and gave as his reason for making the request that he needed the money to go into a different kind of business. He also testified that he had five or six years before given the bankrupt $1,500, which he had saved. "I tell him," he testified, "he shall give me back money, and he tell me he cannot get so much money, and he give me $300." He said that the $1,500 had been saved out of his earnings as foreman in a ladies' waist shop, where he had been paid $30 a week for several years, and that he accumulated it between the ages of 15 and 20. He was unmarried, and lived with his married sister, and paid her $5 a week board.

While it is somewhat improbable, it is not impossible, that he had saved the sum he says he saved by the time he reached the age of 20 years. The bankrupt's testimony was to the same effect—that he had received $1,500 from his brother, and that he received it as a loan; that when he paid him the $300 he did not know that a petition in bankruptcy was to be filed against him; that his brother had ceased working for him seven or eight days before he was closed up by his creditors; that his books contained no reference to the loan of $1,500, and that he never had paid any interest on it, and had given no note; that the $300 was paid in cash, and not by a check; that when the $1,500 was originally paid to him—it was not paid all at one time, but in different sums on four or five different occasions—it, too, was paid in cash; that the reason he did not give his brother a check for $300 was that it would have cost the latter $2 or $3 to have the check cashed. There is no comprehensible explanation given of the reason why it would have cost his brother that amount to have obtained the money on the check. The bankrupt did not schedule his brother as a creditor, and in a statement given by him on November 13, 1911, for the purpose of obtaining credit, the bankrupt did not mention any indebtedness to his brother, in the sum of $1,500, or in any other amount.

The testimony is confusing and unsatisfactory, and in certain particulars is contradictory. The testimony of the brother Isidor as to the disposition he made of the $300 paid him by the bankrupt given on his first examination was that he used it to repay his own indebtedness to his poor relations. At his subsequent examination he stated that he used the money as a deposit with one Drillman, for whom he had gone to work. Both versions are not true, and they discredit his testimony that he had loaned $1,500 to the bankrupt. The liability of the prejudice to the bankrupt growing out of these contradictory statements may be avoided, if the bankrupt is granted the right to recall and re-examine the witness Isidor as to this feature of his testimony.

The bankrupt and his brother are ignorant persons, without much knowledge of business, and with an imperfect knowledge of the English

language. The bankrupt's business was carried on in a lax and primitive fashion. The impression which a reading of the testimony has made upon us is that there is some doubt whether the conduct of the bankrupt was. in reality fraudulent. It seems to us, under the circumstances, that .the safest disposition to make of the matter is. to refer it back to the master to examine further concerning the irregularities in the testimony which are pointed out in his report. Further inquiry may serve to clear up what now appear to be irreconcilable statements. We have not had the benefit of seeing the witnesses on the stand, and for that reason are reluctant to disagree with the master and the District Judge, who reached the conclusion that the discharge should be refused. We should, however, be fully satisfied that we are right before branding as. cheats and perjurers men who may be only ignorant and unused to the methods of modern business and who intended to commit no fraud. As the testimony now stands we are not satisfied that fraud is clearly shown. At least the discharge should not be denied until further testimony is taken with respect to certain irregularities which the master pointed ·out in his report.

The case is remanded, with directions to proceed in accordance with this opinion.

