## In re SPIROPLOS et al.

## BODEAU v. SPIROPLOS et al.

(Circuit Court of Appeals, Ninth Circuit.   October 15, 1923.)

No. 4050.

Bankruptcy ⬒414(3)—Evidence held to sustain finding that trustee failed to show concealment of property by bankrupts.

Evidence *held* to sustain a finding that trustee had failed to sustain the burden of establishing by convincing evidence that bankrupts concealed property belonging to their estate, or that they concealed any property with fraudulent purpose, notwithstanding· evidence of omissions from the schedule of real and personal property in which they had an interest.

Appeal from the District Court of the United States for the District of Oregon.

In the matter of George S. Spiroplos, Miltiades Spiroplos, and Gust Spiroplos, partners under the firm name of George S. Spiroplos & Bros. From orders discharging the individual bankrupts, the trustee, Charles Bodeau, appeals. Affirmed.

A. A. Smith, of Baker City, Or., for appellant.

Packwood & Packwood and J. B. Messick, all of Baker City, Or., John L. Rand, of Salem, Or., and Griffith, Leiter & Allen, of Portland, Or., for appellees.

Before HUNT and RUDKIN, Circuit Judges, and BOURQUIN, District Judge.

HUNT, Circuit Judge. In October, 1920, George S. Miltiades and Gust Spiroplos, partners doing business as George S. Spiroplos & Bros., appellees, as a partnership and as individuals, were adjudged bankrupts. In due course, as individuals, the appellees severally applied for discharges. The trustee, Bodeau, objected on the ground that in the schedules which had been filed the bankrupts knowingly and fraudulently failed to include certain real and personal· property, and willfully and fraudulently concealed the same with fraudulent intent. The referee heard evidence and found against the bankrupts, but the District Court held the evidence was not sufficient to show fraud or wrongful intent, and made orders of discharge. The trustee appealed.

From the evidence included in the transcript and also the testimony in proceedings taken before the referee for the purpose of discovering assets, which is before us by stipulation of the parties, we gather that the bankrupts were in the live stock and ranch business; that in 1917 they sold a band of sheep to Demas and took his note; that in 1918 for a consideration of $2,200, Spiroplos bought the Miller ranch for Demas, to whom title was directly conveyed, subject to a mortgage to the state of Oregon; that the bank through which the transaction was had loaned to George Spiroplos the money to buy the land; that Spiroplos Bros. advanced large sums of money for Demas, but that the now bankrupt firm was then worth $150,000; that afterwards Demas paid for the land and sheep; that goods were frequently ordered for Demas

and charged to Spiroplos; that there was a settlement with Demas in May or June, 1918, and everything up to that time was adjusted; that afterwards further lamb and wool transactions were had, and the firm became indebted to Demas; that in January, 1919, in making a list of the property of the estate of his brother, Nick, deceased, George Spiroplos put in the Miller land as owned by the Spiroplos Bros., one-fifth thereof belonging to his brother, Nick, but that in May, 1919, they ceased to have any ownership in the land; that Spiroplos paid everything in 1919 and 1920, by way of interest due on the mortgage charged against Demas; that the original deed of the ranch was put in escrow by Miller at the bank; that the firm charged Miller with the amount due on the land and mortgage debt thereon; that Demas paid for the land and other matters out of certain wool money he received; that in December, 1919, Spiroplos Bros. included the land in a mortgage to the bank at the instance of the bank; that this was after there was a settlement of the Spiroplos affairs with the bank.

Demas said that he bought the Miller ranch; that in 1918 it was paid for through the bank out of wool and lamb sales, and that Nick Spiroplos handled the moneys and kept them in his (Nick's) account at the bank. An expert accountant employed in 1919 to examine the accounts of Spiroplos Bros., covering the period from the death of Nick Spiroplos in the fall of 1918 to the date of the audit, said that he found that Demas had made a mortgage to the Spiroplos Bros. for some sheep in the fall of 1917 and that he owed them $2,600 on a land purchase; that in 1918 he had turned over, or deposited in the bank, money received from the shipment of lambs and wool; that against these amounts checks had been drawn by Nick for advances made on account of the mortgage, and the land and the checks had been honored by the bank; that all the items which appear in the memorandum at the bank, which included an $8,000 mortgage and the $2,600 land matter, had been covered by checks drawn by Nick Spiroplos and signed in John Demas' name; that there were no matters of record against Demas at the date of the death of Nick, and that at that time he was owing the bank all the money that he was chargeable with; that the mortgage and the advance for the land and various other advances for the winter of 1917–18 had all been settled. This witness said that he got certain information from the bank, that he found matters confused, that some credits seemed to be unexplained, that he failed to find charges to offset certain credits, and that some charges on account of advances had apparently been liquidated by checks charged to Demas' account after the receipt of the proceeds of the lamb and wool sales, and identical amounts were credited on the note registry or upon the account of Spiroplos Bros.

We think it is fairly deducible that Demas owned the land, but that Spiroplos Bros. claimed an equity for the purchase price advanced by them. The transactions between the several persons became somewhat confused, but we do not find substantial ground for concluding that failure to include the land as an asset was due to any willful purpose to conceal the transaction or to deceive any one. In re Rosenfeld (C. C. A.) 262 Fed. 876.

It is said that when the schedules in bankruptcy were filed the partnership owned a gas engine, which was not included. A great deal of testimony with respect to the matter was introduced. To recapitulate, it seems unnecessary, further than to say that the engine was ordered from a hardware company at Baker City, Or., that it was bought by Demas and another man, that it was afterward sold by Demas, and that it had never been concealed. Demas explained the matter by saying that Spiroplos Bros. had a shearing plant at the place where Demas sheared his sheep, and it was agreed that they would furnish the shearing plant and he would furnish the engine; that the engine was ordered by Spiroplos Bros. for him, and that they paid for it, but that he settled with them; that he was generally in the hills, and anything he wanted for himself was sent for by the firm; that he paid about $350 for the engine, and that he paid for it before shearing time in 1919; that he asked them to sell the engine for him, and agreed to pay a commission for the sale.

A mowing machine was also omitted from the schedules. Demas said he was the owner of the machine; that it was bought for him to use on the ranch, and was thereafter sold. The testimony of Demas was corroborated by a witness who testified that in the spring of 1918 he assisted Demas in unloading a mowing machine from a railroad freight car and saw Demas take it away.

Some cattle were omitted from the schedules, but there is evidence to the effect that the cattle belonged to Mrs. George Spiroplos before her marriage.

Some posts were also omitted from the schedules of the bankrupts. The posts were piled up on the Miller ranch, but it appeared that the posts were on the place at the date of the purchase of the place in 1918.

Upon the whole record, we conclude that the District Court was right in the view that the trustee had failed to sustain the burden which was upon him to establish by convincing evidence that the bankrupts concealed property belonging to their estates, or that they concealed any property with fraudulent purpose. Omissions to set forth the transactions complained of are more easily attributed to honest, than dishonest, purposes. Robinson v. Williston & Co. (C. C. A.) 266 Fed. 970.

The orders granting discharges are affirmed.