## In re EMPIE.

## SWENDER v. EMPIE.

(Circuit Court of Appeals, Ninth Circuit. March 3, 1924. Rehearing Denied April 7, 1924.)

No. 4113.

Bankruptcy ⬅467—Order granting discharge affirmed.

An order granting a discharge will not be reversed where the court cannot say that there was error in the finding of the referee, who heard the witnesses, concurred in by the District Court, that the objections were not sustained by the requisite clear and convincing evidence.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Southern Division of the Southern District of California; Benjamin F. Bledsoe, Judge.

In the matter of Walter V. Empie, bankrupt. H. W. Swender appeals from an order granting discharge. Affirmed.

Allen, Allen & Eagan, of Los Angeles, Cal., for appellant.

John W. Luter and Walter J. Little, both of Los Angeles, Cal., and Warren Lee Kinder, of Nogales, Ariz., for appellee.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

HUNT, Circuit Judge. This is an appeal from an order of the District Court granting a discharge in bankruptcy to the appellee, a bankrupt. The appeal is based solely upon the ground that the bankrupt made a false oath during his examination before the referee at the first meeting of the creditors. Comp. St. §§ 9598, 9613; Bankruptcy Act, §§ 14b (1), 29b (2).

The evidence discloses the following situation: At the first meeting of the creditors, July 6, 1922, Empie, bankrupt, testified before the referee that in 1920 he owned a piano and victrola, which he sold for $850 and $300, respectively; that he did not remember the exact date of the sale, or whether he received cash or check, or where in Los Angeles the sale took place. At a subsequent hearing he said that he could not remember to whom the instruments were sold, nor the circumstances under which they were taken from his house, other than that they were taken away in a truck; that he could not recall the name of the purchaser nor where the purchaser lived; that at the time of the sale he was not contemplating bankruptcy; that the sale was not made to any creditor or to any one to whom he was indebted; that he advertised the piano and victrola for sale, but did not remember whether the purchaser was a person answering his advertisement or not; that he had been doing business as the Willis Allen Motor Company; that the company was a partnership which continued until witness filed suit for dissolution and accounting; that his partner was W. Allen, a brother of an attorney in the bankruptcy proceedings; that he has no claim of redemption on the instruments sold; that he sold them to a stranger; that he mingled the proceeds of the sale with his own general funds; that he did not recall which bank he deposited them in, because he was doing business with both the Security Trust & Savings Bank and with the Hellman Bank.

A representative of the music company from which the instruments had been purchased originally testified that in June, 1921, about a year before Empie's petition in bankruptcy was filed, Empie executed bills of sale to the original vendors for the piano and victrola; that no money was paid under the bills of sale, but the company credited Empie with $850 and $312.50; that on September 12, 1921, at Empie's request, due bills for the amounts were issued by the music company in favor of Vernon H. Martin, who used the due bill for $850 in the purchase of a piano; that the company still had a credit for $312.50 in favor of Martin on its books.

A witness named Miles testified that he met Empie on the street car and told him he was dissatisfied with a piano he was purchasing, whereupon Empie told him he knew where he (Miles) could get a due bill that would save him some money; that later he paid Empie $200, and the piano was delivered to Miles; that he sent checks for the balance of the purchase price of the piano ($55) each month to Empie for Martin. A check made by Miles to Martin, with notation, "Pm't on piano," was in evidence. Witness said that he understood the piano had belonged to Martin; that all his canceled checks had been indorsed "Vernon H. Martin." Martin, who was Empie's brother-in-law, testified that Empie had owed him $500 since June, 1919, and that the due bills referred to had been assigned to him (Martin) in settlement of that indebtedness; that, when witness wrote to Empie, asking him to take up his note, Empie replied that he was not in a position to liquidate, but that he would be glad to settle by having the due bills assigned to Martin; that witness was then living in Illinois, and upon receipt of the due bills they were returned to Empie with the request that he dispose of them for him; that he signed the contract for the sale of the piano with Miles.

In February, 1923, at the hearing of specifications of objections to discharge, Empie testified that he was away from home at the time the sale of the piano was actually closed; that he was away when the due bills were issued, and that they were mailed to him by the music company, which had sold the piano; that he could not recall the name of the purchaser, if he ever knew it; that he had asked the music company to assist him in disposing of the instruments, and that he received the due bills about a year previous to filing his petition in bankruptcy; that he sent the due bills to his brother-in-law in payment of a note for $500.

We have stated enough to show that portions of Empie's testimony as first given were at variance with what he swore to at subsequent hearings before the referee. But differences did not escape the scrutiny of the referee, for he commented upon them in his report, saying that Empie had testified under "persistent pressure," but that he had requested time and opportunity to look up the details of the transaction relating to the piano and phonograph by referring to memoranda which he stated he thought he had in his possession. The record accords with this last statement of the referee, in that it shows that upon the first hearing Empie, after testifying to the sale, said that he would have to look up the name of the purchaser, and that he could get the information for the next meeting; that he could not at once recall where the sale occurred; that he had a "hazy remembrance," but would look up the details by relation to other matters, and did not remember about the deal.

The referee also commented upon the appearance of Empie on the stand, reporting that he did not seem to be confused, but appeared to be a "frank, candid, and willing witness," but that his memory, until refreshed, seemed almost uniformly bad, although the general impression made was favorable in respect to his willingness to testify. The case well illustrates the great advantage that a trier of fact has in

hearing a witness testify and observing his manner while telling his story.

While a reading of the testimony creates a strong suspicion that Empie was deliberately misrepresenting facts, on the other hand, it is not improbable that Empie failed to recall incidents connected with the sale of the articles of merchandise, and that he was averse to giving positive answers without opportunity to refresh his memory. The referee was not convinced that Empie's testimony at the first hearing was false or fraudulent, and the finding to that effect was made with a correct understanding of the rule that the burden of sustaining objections to a discharge in bankruptcy by clear and convincing evidence is upon the objector.

The District Judge reviewed the record, and was not satisfied that the referee had erred. We, too, have carefully examined the whole case, and cannot say that the conclusions reached are erroneous. This court will not, therefore, disturb the order overruling the objections and granting a discharge. Arenz v. Astoria Savings Bank (C. C. A.) 281 Fed. 530, certiorari denied 260 U. S. 740, 43 Sup. Ct. 98, 67 L. Ed. 490; In re Spiroplos (C. C. A.) 292 Fed. 745; Poff v. Adams et al., 226 Fed. 187, 141 C. C. A. 185; Remmers v. Merchants-Laclede Bank, 173 Fed. 484, 97 C. C. A. 490; In re Elliott-O'Brien (C. C. A.) 284 Fed. 507.

Affirmed.