## In re STUDLEY.

### No. 21647.

District Court, D. Maine, S. D.

Oct. 19, 1940.

278

Jacob H. Berman, of Portland, Me., for trustee.

Adelbert L. Miles, of Portland, Me., for bankrupt.

PETERS, District Judge.

On petition of the above-named bankrupt to revise the order of the referee denying discharge.

A creditor filed objections to the debtor's discharge on the ground that he had committed offenses punishable by imprisonment, to wit, that he had knowingly and fraudulently concealed from his trustee property belonging to the estate and that he had made a false oath in a proceeding in bankruptcy. The false oath, as alleged, consisted in making oath to the schedules in which the property referred to was not listed.

The whole matter narrows down to one issue, and that is, whether the omission from the schedules of the property in which the bankrupt is alleged to have an interest was made knowingly and fraudulently for the purpose of concealing it from his trustee. He cannot be held guilty of making a false oath in simply swearing to schedules in which an asset is omitted unless the omission was with fraudulent intent.

There is no particular dispute about the facts. The bankrupt had made a contract with a Mr. Jacobson to purchase a house and lot in which the bankrupt was living at the time of the proceeding. The price he was to pay was $6,000, and the property was under mortgage for $6,000 given by the owner. The written contract was not offered in evidence. The bankrupt testified that his copy was destroyed. He had, however, made payments under the contract, beginning in 1937, and had paid in all,—as the referee found,—$1,320 down to August, 1939, with some small irregular payments since then. When the mortgage debt had been reduced $500 a deed was to be given to the purchaser. It does not appear whether the bankrupt ever had caught up with the mortgage debt to that extent; but probably not, as taxes also were to be paid by the purchaser and his payments were somewhat irregular on a constantly increasing debt,—assuming that it was running on interest. There is in the record no testimony by the owner of the property and no account rendered by him. The bankrupt testified that the contract was void ninety days after failure to make the regular monthly payments, and evidently considered it worthless as an asset.

For some reason not apparent, nobody asked the bankrupt why he did not list his contract of purchase as an asset of his estate; but the whole picture shows clearly enough his reason was because he thought he had nothing of value to list,—as he evidently had not. This was also the opinion of counsel for the objecting creditor who stated at the hearing that he did not regard the interest of the bankrupt in the property as of any value.

The theory of the case before the referee seems to have been, that the bankrupt had in this contract a technical asset; that he intentionally omitted it from his schedules; that he should not assume to decide whether his interest in the contract had any value, and therefore he had fraudulently concealed an asset.

The position of counsel for the objecting creditor was stated at the hearing: "These new blanks * * * now say to list all the real estate that you hold on contract. The old ones didn't have that. All contracts and all interest in real estate, whether same be real, personal or-

mixed. He didn't do it and we had to dig it out. Whether or not there is any equity here isn't for this court to say. This man knowingly, we say, didn't disclose the contract of real estate. Of course it is technical. But he is living in the house and he hopes to stay there or sell the property. He doesn't want to let go of it. It is his home. He has a contract with Jacobson. My point is that he doesn't disclose in his papers that he had a contract with Jacobson. If he disclosed it and put in there "Value unknown" I would have nothing to say. I don't think there is any value. But he didn't disclose it."

The referee in his certificate on review states in his conclusion: "The evidence does not warrant a conclusion that the omission was inadvertent or due to excusable neglect or forgetfulness. The fact that the bankrupt at all times retained possession of the property, believed the contract to still be in existence at the time of filing his petition in bankruptcy, and immediately thereafter commenced payments substantially in excess of monthly amounts called for by the contract, forces me to the conclusion that he knowingly and fraudulently omitted this asset from his schedules to which he · made oath, and that he knowingly and fraudulently concealed from his trustee some of his property."

There is a non sequitur here. It is quite true that the bankrupt should have listed his contract interest even if he thought it had no value, and that he is not the one to decide; but, if he did assume to be the judge of value and did intentionally omit mention of the contract in his schedules, it does not follow that he committed the prison offense of concealing assets, even if he continued in possession believing the contract to be in existence and commenced to make substantial payments.

The facts stated and the facts shown in the record are as consistent with honesty as with dishonesty on the part of the bankrupt.

■ The bankrupt cannot be properly denied his discharge unless the court is satisfied from the evidence that he had committed a prison offense, and the burden is upon the objecting creditor to show it, not beyond a reasonable doubt, but by clear and convincing evidence.

The Court of Appeals in this Circuit, by Judge Putnam, in the case of Troeder v. Lorsch et al., 150 F. 710, 713, said, referring to this subject: "The alleged concealment must have been made knowingly and fraudulently; and, according to the practical construction of the statute, it is settled that the alleged false oath must contain all the elements involved in perjury at common law, namely, an intentional untruth in a matter material to an issue which is itself material."

He also quotes with approval a statement by Judge Coxe in Re Howden, D.C., 111 F. 723, to the effect that: "The authorities are unanimous in holding that the burden is upon the opposing creditor to prove his objection, not necessarily beyond a reasonable doubt, but by clear and convincing testimony."

"The Bankruptcy Act [11 U.S.C.A. § 1 et seq.] is very liberal towards the bankrupt as to his discharge; and the act in so far as it relates to his discharge is to be given a strict construction in favor of the bankrupt. The purpose of the act is to release honest debtors from the burden of their debts." In re Rosenfeld, 2 Cir., 262 F. 876, 878.

■ It is perfectly well settled that the mere omission of property from schedules is not enough to bar a discharge. It must be shown by clear and convincing evidence to have been done knowingly and fraudulently for the purpose of concealment; a prison offense.

■ When the property not listed is a doubtful right, or a right of doubtful value, the reasonable inference that it was omitted for that reason only is permissible in the absence of evidence showing fraudulent intent. So much the more when the property is of no value. The bankrupt is entitled to the presumption that he acted in good faith.

"It may be assumed that it was the duty of the bankrupt to surrender any equity, however slight, he may have had in the royalties, and to note it on his schedules. However, to bar his discharge, under the provisions of section 14 [sub.] b(1) of the Bankruptcy Act * * * 11 U.S.C.A. § 32 [sub.] b(1), for having committed an offense punishable by imprisonment, to wit, concealment of assets from his trustee, it was necessary to show that it was done knowingly and fraudulently. * * * If fraudulent intent in

that respect is not shown, the charge of having made a false oath to the schedules falls with it. * * *

"The charge that he concealed assets and made a false oath because the equity he believed he had in the royalties was not mentioned in the schedules is technical in the extreme. The reasons for denying a discharge to a bankrupt must be real and substantial, not merely technical and conjectural." Dilworth v. Boothe, 5 Cir., 69 F.2d 621, 623.

"* * * the omission from his schedules of doubtful property rights or interests of the bankrupt, or of property rights or interests which the bankrupt honestly believes he is not entitled to, or does not own, or need not be scheduled, is not such omission as would make his verification thereof a ground for denying him a discharge." C.J.S., Bankruptcy, Volume 8, §§ 518, 519, pages 1407—1412, and cases cited.

"The only indication of an attempt to conceal it was the failure to enter it in the schedules; but the law does not punish a mere failure to enter property in the schedules. * * * And unless the evidence is such as to convince the court that the bankrupt was guilty of a crime for which he should be imprisoned, the charge cannot be sustained." In re Opava, D.C., 235 F. 779, 783; Hanover-Capital Trust Co. v. Meyer, 3 Cir., 57 F.2d 815; In re Spiroplos, 9 Cir., 292 F. 745.

I reach the conclusion that the bankrupt did not receive the full benefit of the presumptions in his favor, and feel that the evidence is not sufficient under the statute to warrant denial of his discharge.

The action of the referee is reversed, and the bankrupt may be discharged.